The next case is number 2009-1327 Misincorporation v. Clearplay Mr. Carey whenever you're ready As I understand it, before you start you had indicated that there would be videos that would be shown Have you decided not to take the time from oral argument by showing videos? Your Honor, that's correct. My colleague was contacted by someone from the clerk's office and we were encouraged not to spend time with setting up equipment, etc. I would refer the court to our corresponding briefs on DVD For example, if you go to our brief at page 24-27, the DVD, click on the links there and we discuss the content and it will play it for you and see exactly what we're talking about Well, the clock has started, so why don't you get into your argument May it please the court This is a case about the proper interpretation of the settlement and license agreement The district court's decision is wrong on all counts First, section 1.4, subsection 3 of the agreement requires substantial compliance with Nassim's content specifications but the district court read that requirement out of the agreement failing even to mention the term substantial compliance in its ruling Second, the agreement limits Clearplay's license to DVD players that, when sold, incorporate contractually specified software but the district court excused the players on the ground they have the ability to incorporate the software later on And third, section 1.14 of the agreement requires that Clearplay's software interface implements quote, the following four levels of explicitness, non-implied, explicit, and graphical, capitalized terms but the district court excused an interface that implements four levels that are not only different than those four but that operate in a way that is opposite to the specified levels So the court has two competing interpretations for it One, that's satisfying, it's even-handed, it's balanced that takes section 1.14 and 1.48 and gives them both meaning and has them operate complementarily The other, which was the interpretation entered by the lower court, is unsatisfying, is one-sided, is not balanced completely confuses the requirements of 1.4 with 4.8 and leaves each of those sections with no operative effect Taking first Basically you're arguing that the lower court made erroneous findings of fact Are they legal issues that you want to argue as to where the court made legal error reversible legal error in conjunction with its determination? Yes, Your Honor. I think the principal thrust of my appeal is that the court's contract interpretation which is a legal issue subject to de novo review by this court without any deference to the lower court warrants reversal or at least vacature and remand because the court interpreted these contract provisions incorrectly and that legal issue is the principal focus of this appeal There's also, I think the facts are also, the factual findings also support the judgment and would satisfy the clear error standard of review but there are definite questions of law governing the contract interpretation which is the primary argument here Number one concerns the court's construction of paragraph 1.4 of the agreement which is where the substantial compliance standard comes from It says that Clearplay's, first of all it requires a Clearplay custom play OC map that is a custom play OC map created by Clearplay It has three requirements Such a map must identify content in a movie using the content specifications that are attached to the agreement incorporated in the agreement The court ignored that requirement In its order, special master's report that the court adopted doesn't even discuss that 1.4 subsection 3 requires that the filters, maps, filters and maps are synonymous terms be in substantial compliance with the content specifications The district court's order doesn't even mention substantial compliance doesn't even hold them to a standard of substantial compliance That can't possibly be the proper interpretation of a contract whose operative requirement in 1.4.3 says the maps shall be in substantial compliance with the specifications What the court did is it took a different provision it melded another provision called section 4.8 which has to do with omitting mapping in certain specified limited circumstances in which the mapping of a movie can be Counsel, it seems to me that the lower court recognized the next part of 1.4.3 which you haven't mentioned yet that it being recognized by the parties that application of specifications requires flexibility of artistic judgment and the issue it seems to me comes down to is that second phrase, flexibility of artistic judgment the only way in which you can have any deviation from full compliance i.e. you still have to substantially comply will allow that little bit of deviation but only if it's in the interest of artistic judgment or is it substantial compliance modified by artistic judgment meaning you have to be in substantial compliance but of course you're free to exercise your artistic judgment even if it takes you outside of substantial compliance and so it seems to me those are the two competing interpretations Am I wrong? I think that's a fair characterization Your Honor So tell me what we do with the language flexibility of artistic judgment The operative, the active part of that 1.4.3 of that sentence is shall be in substantial compliance what follows after that is comma it being recognized that application of specifications flexibility of artistic judgment application of specifications requires flexibility of artistic judgment within the overall goal of maintaining consistency so the active part of the contract here is shall be in substantial compliance the district court went the latter of the two competing interpretations you just summarized and said we're just going to say Clearplay has artistic judgment to determine what to code and whether or not to code saying nothing about substantial compliance Maybe his construction is substantial compliance unless you need to exercise your artistic judgment and then you have flexibility Well, I don't believe that you can properly read the contract that way because then substantial compliance is completely meaningless Well, no, because if it's not on the basis of artistic judgment you can't be arbitrary in not reaching substantial compliance This is my thinking about what the lower court held that you can't be arbitrary you are allowed to deviate from substantial compliance but only if it is in the interest of artistic judgment and I imagine there could be some case still where you could say this wasn't artistic judgment because then there would be some dispute over what really does artistic judgment mean you're allowed to exercise your artistic judgment only so long as what you're removing is critical to an understanding of the plot or something, you know Does artistic judgment mean you think cigarettes are pretty? No, probably not But maybe it seems to me that's where your dispute would lie if that were the way the lower court went I don't know, what are your thoughts on that? My thoughts are, first, artistic judgment, I don't believe can properly be interpreted to trump the active requirement of substantial compliance in this contract I believe that artistic judgment explains, like a whereas clause why you have a substantial compliance requirement as opposed to a full or perfect compliance standard I believe that's the clear import of reading that sentence that shall be in substantial compliance, being recognized that The requirement, the shall be, is the substantial compliance Therefore, it's wrong to say artistic judgment trumps or diminishes the substantial compliance standard The filters must be in substantial compliance, period Now, second, what does artistic judgment mean? The court erred on this, too because what it did is, it interpreted artistic judgment using the conceptual framework not of 1.4, but of 4.8 a separate provision The judge construed, following the special master The judge construed artistic judgment to include when Clearplay thinks that it can exercise its artistic judgment when it thinks content in a movie is important to the movie, and therefore decides it doesn't want to filter it for the consumer The idea of what's essential to a movie what's important to a movie, to a plot or whatever character development that is in 4.8 in the omitting mapping provision which specifies Yes, but 4.8 only goes to when you want to eliminate an entire category I'm going to allow all violence but Clearplay probably doesn't want to go that route They're not going to be able to sell movies and filters to customers if that's the only basis for filtering to which they're entitled They think, we can't chop up a movie and serve it up in a way that's indecipherable It's not going to be effective You're not going to want that because you're going to get no royalties You don't want them to go out of business and be unable to sell movies that customers want because your client then gets no royalties We're trying to establish a standard for this technology and the standard is that consumers can use it no matter the provider, no matter the source and they know when they click on the player and they set their settings and they say, I want explicit violence removed I want implied substance abuse removed that the playback is going to take all that out not leave some of it in and take some of it out which is unfortunately the standardless problem that we have here The error with the court's idea of artistic judgment is that it thought of artistic judgment in fact, it construed artistic judgment by reference to 4.8 defining what is artistic judgment The court thought artistic judgment was whether something is essential to the movie or not That was wrong Why? Because 4.8 No, but why is it wrong? Forget 4.8, why is it wrong? What else does artistic judgment mean then? Artistic judgment means two things Artistic judgment is only in this contract in one provision which is 1.43 and it's used in connection with the following phrase Artistic judgment in application of the specifications Okay? Let's look at the specifications Does that give Clearplay the right to say I'm not going to code a particular scene because I don't think that applying a code to this particular scene is appropriate based on my exercise of artistic judgment? No, your honor I don't believe that's what it does give them If they want to not code they have to turn to 4.8 and they have to satisfy the conditions of 4.8 Why? Well, first of all it's a provision called omitting mapping Mapping is coding Alright? So, if they want to not code What is your idea of substantial compliance? When would someone be in substantial compliance not in full compliance? Okay I'm going to Let me try to explain how I think that works So, artistic judgment in applying the specifications doesn't mean I'm not going to code the movie because I think the content of the movie is important to the plot Okay? That's where the court erred Artistic judgment in applying the specifications means Okay, the specifications give me definitions for a bunch of content all these content categories and these different levels of content So, for example we have implied violence The specifications say implied violence is X and you can look at the definitions Artistic judgment in applying the specifications is artistic judgment in determining whether the content in the movie falls within or outside of the definitions in the specification That's artistic judgment The specifications are 80 pages They were designed to be as comprehensive as possible but obviously they can't cover every possible type of content in any kind of movie That would not fall within 4.8, you're saying? That's different than 4.8, your honor That's completely different It's conceptually different Because using artistic judgment to determine whether content in a movie falls within or outside of a definition in the spec that's 1-4 artistic judgment Okay? The idea of well yeah, it falls within the definition but I'm not going to code it because if I take this out then the viewer is going to miss something important to the movie See, that that is not artistic judgment That is what 4.8 is designed to address omitting mapping and that is Artistic judgment is very, very flexible That's a flexible aspect of what you're trying to do because if I'm trying to eliminate a violent scene it could eliminate some part of the movie which is in essence a real continuation of the story so you're missing on part of the story by eliminating the violent scene And there's no problem with that There's no problem with that because we're talking here about a system for removing content that viewers are specifying that they don't want to see Okay? That's why 4.8 exists 4.8 gives them a special limited circumstance where they can they cannot code something if it's important The requirement though So you're saying they would be in compliance with this agreement under referring to 4.8 by saying I'm going to take out every scene that has to do with violence Your Honor But they are not in compliance if they say you know this one scene maybe it has some violence in it but I think it's important to the story so I'm going to leave it in That's that's what the agreement provides for and there's actually no dispute on the meaning of 4.8 in that regard If you look at at their brief at page 38 our brief at page 51 and testimony from their president at JA24884 what you'll see is this what is everybody agrees on what 4.8 means 4.8 means if so you code the movie here's how this works you code the movie Okay? You're supposed to code all the content in the movie that falls within the specifications definitions Now when you're done coding the movie if you determine well if I if all the explicit if everything that I just coded is explicit violence it's going to leave the viewer's not going to be able to have a general appreciation of the movie But it's all or nothing It's all or nothing That's the only But isn't that why 1.4 differs from 4.8 4.8 is an all or nothing I've got to remove all the violence The Godfather is now a worthless movie and the best lines are gone There's no horse head in the bed Okay? So I've got to remove all of it because everything Or Or You know what? I'm going to take out a lot of the unnecessary violence that isn't useful to the plot which probably still reduces the Godfather to about 20 minutes But you've got your horse head back in You know? Isn't that the difference between 1.4 and 4.8? The critical parts of the movie that everybody needs are still there? No This is This is If you If you interpret 1.4 Artistic Judgment to allow clear play to not code something not code a single scene because they think it's important to the movie then the requirement in 4.8 for for which only lets them not code something when they take when they don't code the entire category for that movie because that category is essential for the movie You've got no meaning left for 4.8 at all It has absolutely no operative effect If you can If you can pick and choose which scenes you want to cut based on importance to the movie then the requirement in 4.8 that you can only not code if the if all the content at the entire category for the movie is essential Then 4.8 will never be used You can just completely bypass 4.8 So you can pick and choose on a scene-by-scene basis It doesn't have to apply across the movie That's the error That's one of the main problems The court took 1.4 and its definition of 1.4 it just mixed 4.8 up with it and didn't give the two provisions their clear separate meaning They have different purposes in this contract Well What about the categories in the 1.8 Those are the categories you're saying that only apply to 4.8 So we can eliminate the categories by the mapping aspects of 4.8 Well You've got the 12 categories defined in 1.8 1.8 identifies what the 12 categories are  and if you look at the specifications which are attached to that agreement you'll see that each of those 12 categories has a definition has a requirement has a requirement has a definition has rules clarification and examples of what kind of content falls within that category So 4.8 operates to say if I've mapped the movie and I've identified 14 different segments in the movie as explicit violence but if the viewer if those if the viewer checks off explicit violence when he sets up his preference to the interface and he gets that playback with all the explicit violence taken out and he now has been denied a general appreciation of the movie then ClearPlay has the discretion to not code all that explicit violence but it's got to do it across under 4.8 it's got to do it for the whole category and the idea is you tell the consumer when it clicks off explicit violence explicit violence is not coded for this movie so the viewer is going to know that the explicit violence is still going to be in there so you have to read essentially 4.8 in conjunction with 1.8 because those categories that are listed in 1.8 can be eliminated by 4.8 each individual category can be taken out under the circumstances that are in 4.8 which are pretty limited again you can they have discretion first of all they have to map the movie according to the circumstances does this meet the definition of implied violence in the spec or not for example we use this example in the brief violence is defined as physical force which causes harm to a sentient being let's say you had some scene in a movie segment of a movie where somebody gave a big hard back slap on somebody I will confess that depending on how that's presented in the movie it may or may not qualify under that definition for causing harm to a sentient being they've got artistic judgment to treat those borderline questions of what falls within the spec or not but that didn't happen here if you look at the judgment okay the amended report from the special master first of all he issued an original report didn't analyze any of the content we said your honor you can't adopt this there's no factual findings he said go back and amend and include some examples of why you know you ruled the way you ruled his examples in the amended report if you look at his discussion of the content in the eight movies that were sampled and issued his discussion of the stuff that wasn't coded in those movies is predicated entirely on whether the content was important or not to the plot or character whether it was objectionable content or not so it was wrong to say that not coding that stuff is excused by artistic judgment because he didn't even determine that that content didn't actually qualify as objectionable content under the spec and then he didn't apply the limitation of 4.8 he didn't even purport to be using 4.8 he took the essential sensuality idea of 4.8 threw it into 1.4 okay if he was going to look at importance to the movie he would have been analyzing their filters under 4.8 and in order for them to be excused from not coding something they would have to have not coded all the content at a certain level so for example if they didn't code explicit violence and they wanted to say it's excused by 4.8 they'd have to have left all the explicit violence out of that movie but that's not nobody excused that's not what happened here they took some out they left some in so there's no excuse for    into 4.8 so that's not what happened here so that's not what happened here so that's not what happened here so that's not what happened here so     here so that's not what happened here so let's look at 1.4 subsection 3 shall be in substantial compliance you said it exactly right judge moore your interpretation I think is the one that you asked Mr. Kerry about is the same one that Judge Huck in the district court used substantial compliance unless the parties want to exercise artistic judgment artistic judgment is added here as a qualifier and of what it means to say I don't see what substantial compliance is actually meaning if I read it the way you would like me to read it I tell you how the district court understood it and how I understand it first of all this is substantial judgment to a manufacturing contract so the idea that's put forward by the appellant here that somehow we ought to measure this quantitatively with reference to statistics and we can look at percentages is a concept that was rejected by the court below it doesn't make any sense in this context no but the question I think we're probing here is the meaning of 1.4 section 3 and the extent to which artistic judgment relates to simply determining what is in or out of a category or what might fall under a particular category or not or is it a broader concept that allows you to conclude that alright this particular scene does show some violence but in my judgment I don't think we should code this because the movie requires that scene. It's the latter and there is no limitation of the kind that Mr. Carey is describing with respect to artistic judgment here. It's an undefined term to be understood in its common sense way and the idea... Is that really subjective to the point where artistic judgment would be for me different than what it would be for Judge Moore and what it would be for Judge Lin? Yes. But I could still be in substantial compliance with the agreement. Yes that's exactly right and the artistic judgment here is clearly clear place artistic judgment. That's the entity that's vested with the artistic judgment and if you want... But it says shall be in substantial compliance with the custom place specifications. Yes. It being understood that the application requires artistic judgment. A little history here is helpful. This is in the specific findings of the special master. When the parties were negotiating this when Nassim the appellant first proposed well let's settle our patent dispute by you entering into a license with us and we want you to adopt these specifications. Clearplay looked at the specifications and said we can't adopt these. These are going to be problematic to our business. We're not taking the song Maria out of West Side Story. You may have some people at your business who think that's excessively mushy but we're not doing that. We're not taking the lightsaber duels out of Star Wars. You're not taking any of these out. You're simply mapping them and giving the user the opportunity to choose the level of explicitness they want and I may well decide to leave all that mushiness in because I don't care. It's not a matter of taking it out. Am I understanding the invention properly? You would understand the invention properly if someone could look at the specifications before watching the movie and look at all the scenes and say, how would that work? But that's not how a user uses it. The user never sees the specifications. In fact, Nassim insists that they be maintained as a trade secret and the user doesn't want to watch the movie and then say, in retrospect, oh, now I'm going to watch it a second time. The problem with not allowing artistic expression is that you get into the box that is created by a rigid application of these specifications. And here's the box. By their own admission and by the special master's finding, the scene in The Wizard of Oz where Dorothy says to Toto, Toto, we've got to run away because the witch is coming to get the dog, is classified at the same level of explicitness in the same category as the scene from the movie Natural Born Killers with Woody Harrelson where they murder the mother and burn the father alive. They're both coded at the same level of dishonored parents. You're not suggesting you want us to decide whether that's true or not. You cannot interpret artistic judgment in the way that Nassim is suggesting without putting clear play in just that box. Let me give you another example. I'd rather not have examples. I'd rather focus on the language because this is what I'm really struggling with. And what I'm struggling with is the substantial compliance. Why doesn't it give you the ability to, okay, fine, you can pick your horse head, you can pick your scene about which the movie cannot be understood without because you know what, then you wouldn't be outside of substantial compliance. You're allowed to exercise  and choose a scene or two here or there that is absolutely essential. Suppose I was to interpret it that way. I was to sign on to the artistic editor    I have the ability to do that. So I would say you can pick your horse head, you can pick your scene, but you still ultimately have to be measured to have been in substantial compliance. I don't dispute the definition that you're suggesting. And that is the stipulation that his findings would be reviewed on a clearly erroneous standard. That special master made substantial compliance findings which were adopted by the court. The idea that nobody looked at substantial compliance, I can quote the court to six, seven, eight places in the special master's ruling in his report and recommendation where he says, I find this to be in substantial compliance, they properly exercise their artistic judgment. Well, there's a difference between they properly exercise their artistic judgment and after you exert that, there's still substantial compliance throughout the movie. Aren't those two different issues? This is what I'm still trying to appreciate which is the substantial compliance is your view of the contract interpretation that the contract should be interpreted as you shall be in substantial compliance. Substantial compliance is being qualified by artistic judgment so that if you're using your artistic judgment in an objective and subjectively reasonable way, in good faith, you will be in substantial compliance. Substantial compliance captures another concept here that we haven't talked about as much. As long as you're exercising your artistic judgment, you don't have to be in substantial compliance of the custom play specifications as long as the reason you're not complying, i.e., not mapping specific scenes, is because of your artistic judgment. Yes, I think that's one way to describe it. It means something else as well. Sometimes, this is a human process, the process of filtering, and people make mistakes. And there were instances in the course of the trial where people reported, where people pointed out places where clear play made a mistake. Let's say there's an artistic decision, oh, that's critical, and I have to leave that in. It's just a mistake. But you don't have to be perfectly in compliance. You can make mistakes and still be in substantial compliance. That's why it's important to cross-reference this whole concept to the mapping dispute resolution clause in 4.6. That is the clause that the party set up to deal with disputes about the maps. And in that provision, it specifically says that what we're looking at, what we're judging here, is whether the filters were created in good faith. That's the word. Now, I'm not saying that's just subjective good faith. That is an objective and a subjective good faith standard. But that's what you're being measured against. Are you exercising your artistic judgment with good faith? If you are, you're in substantial compliance. Are you, have you made a few mistakes? Maybe so, but you can still be in good faith. In this case, I don't understand them to be alleging that you acted in bad faith with regard to the exercise of your artistic judgment, but simply that you exceeded what you're allowed to exercise it on because you used it to trump your need to be in substantial compliance. Well, that's reading, I think, a conflict into those words which does not exist in the agreement. Those can be read in harmony as one qualifying the other, not in some conflict with each other. All of this, and to your point about did we exceed our artistic judgment, all I can say about that is that is a factual finding, and it led the Court, the Special Master, to say and the Court to adopt the following findings of fact. And I'm quoting. Clearplay filters allow movie watchers to remove some objectionable content while maintaining the presentation and artistic quality of the movie, including the plot, emotion, and character development. Quoting again from the Special Master, Mr. Pelkowski, that was NISM's chief witness, testified that NISM's method of applying version 5.5, that's of the specifications, ignores the context of the content, the type of movie, the plot, the characters, the anticipated audience, and even whether a person would be able to comprehend the movie, which led the Special Master to say, the reality is if the agreement were interpreted as NISM urges, the result would be filters that create a movie watching experience that could be of no interest to Clearplay's customers. That factual finding is critical here because it is a reality that the Special Master looked at the movies, filtered the way Clearplay filtered them, looked at the movies unfiltered, and then looked at versions of the movies, filtered the way that NISM says they ought to be filtered. But you know, part of what you just read strikes me as the Special Master's attempt not simply to find facts, but to reform the contract to an agreement which he perceived would be a more realistic agreement for Clearplay to have entered into. It almost seemed like he was concluding, there is no way I can construe this agreement the way NISM suggests it should be construed because nobody in his right mind would sign it. That doesn't make any sense. There's got to be some artistic judgment, there's got to be some judgment calls made in this agreement, so I'm going to construe it differently. But the question is, is that a legitimate matter of fact-finding or is that an inappropriate reformation of the contract that's not called for? I wouldn't call that fact-finding. I would call that a proper application of Florida contract principles. You look at the context in which an agreement is created. What is the business to which this agreement relates? And you say that is consonant, that is reasonable in the context in which the contract is created. And so when he's faced with the question, what does flexibility of artistic judgment mean, as I look at these words on the page in the context in which they appear in this agreement, it's completely appropriate for him to say, what are we talking about here? We're talking about the artistic endeavor of creating movie filters. If I interpret it the way Nassim says I should interpret it, it's nonsense. It's gobbledygook. It produces something no one would have any interest in, and no one could understand what  or not filtering. It would just be junk. That can't be what it means. It has to mean something else. But doesn't the contract recognize that substantial compliance requires flexibility of language? I think it's ambiguous, and the special master worked on the stipulation of the parties, my stipulation, Nassim's stipulation, that that language was not ambiguous, and the  not to be ambiguous. Is that a legal interpretation? Yes, it's always a legal interpretation as to whether or not language in a contract is ambiguous. So we could look at that language and say that it is ambiguous and reverse the finding by the lower court at that point? You could. It's probably worth noting that the special master, out of an excess of caution, not knowing what the district court would do, not knowing whether the district court would find it to be ambiguous or unambiguous, he couldn't know what that legal conclusion would be, made findings of fact about the parole evidence and said, it all comes out in the same place. I've looked at all the parole evidence, I've listened to the parties' intent, I'm making findings of fact, it all comes out in the same place. Is that all in the appendix? It is. It's in the special master's report. A complete report. Yes. I have a question on a technical point. We have the specifications comprise this 80-page document, and that we have the appendix, the home viewers project, the instructions applied to the home viewers, and we have that attachment with the content to capture, which lists only eight instead of twelve categories. Explain to me, clarify for me, if you will, how the home viewers were to code these movies that they were watching in compliance with the 80-page specification if all they were given was this one-page document with eight categories? Actually, coding the movies in accordance with the specifications and substantial compliance is not the job of the movie watchers. There are two levels of people involved. This is why I need your help. There are two levels of people involved here. There are the so-called filter developers who are full-time people who are expert in creating filters. There are movie watchers who, revising the filters consistent with the 12 categories and the four levels, were assigned very specific projects to capture certain content that the filter developers were delegating a second look at to the movie watchers. They have a delegated subset of the larger function being performed by the filter developers. In fact, every scene in every movie was coded to one of the 12 categories and one of the four explicit levels. It was not done by the movie watchers. They are performing a narrower function than that. The filter developers will have done, will have, and with the use, as the special master found, of very specific content. I probably ought to say just a word about the other issues in the case, although they have not been the subject of the argument so far. There is another set of issues that were tried, not to the special master, but to Judge Huck, relating to whether the software and the players functioned the appropriate software, contained or appropriated the appropriate software, and he also found that the software functioned in such a way as to quote, implement the four levels of explicitness. Now, Nassim here, the appellant, wants to say that Judge Huck misread the word incorporates and he misread the word implements. Those were the terms he interpreted them according to their plain meaning. They want to say, well, incorporates can only mean the status of the player at the time of its sale. And Judge Huck said, no, that is a description of its function. What does it do? Does it incorporate this software? That is exactly what Judge Huck  Thank you. Judge Linn, you have two minutes. Thank you, Your Honor. Number one, Judge Linn, my colleague was inaccurate when he said, when he says that everything, every segment is coded using a category and level to the spec, what you should appreciate, the events that they identified are assigned a category and level from the spec. That's true. But the problem is, there are 700 objectionable content events in eight movies that they never identified and didn't code at all. So those weren't assigned any category and level. So when he says that the movie watchers and the filter developers, all the content was assigned a category and level to the spec, he's talking about the ones they identified and considered to be objectionable. They left the point here, the non-compliance, was that there's 700, more than half, and the fact does fall within the definition of objectionable content in the specifications. If they apply the specs perfectly, the way that you want them to, or even in substantial compliance, are the movies going to be watchable? I mean, are you going to be able to understand and appreciate them? Are you going to be able to understand what happens? I mean, we have a lot of fact findings saying no. There's no fact finding on this. It's just attorney argument that it'll be unwatchable. There's fact findings. There's special master findings that suggest that the movies would be reduced once they applied them. They were able to see them, right? The special master looked at both versions and it removes everything. I would say there's no competent evidence on that. No customer was brought to testify. This was just attorney argument. Well, the special master can certainly look at the one with the NISM specification and say the one with the NISM specification leaves me not having a clue what this movie was about. Why do you want to do this? I kind of don't understand the whole purpose behind this. The problem here is this is why my client lost this case below. Because they made this ploy that our idea of content filtering is no good and they really shouldn't be held to it. The point is they're required to substantially comply with the specifications. You can't read that requirement out of the contract because they argue that a customer might not like the product. There was no evidence of that. I would put the counterpoint which is if I'm a customer, I'm a parent, and I buy this system because premised, the only reason I'm buying a clear play filtering player as opposed to a Sony player is because it tells me in the advertising which is in the record that it's going to skip and remove the violence. I click on my interface to remove the violence because my four-year-old wants to watch this movie but I only want to let him see it if the violence is out and the movie gets played back and it's full of people being speared and heads chopped off and gutted with knives which if you click on our corresponding brief you'll see all the extreme violence that's left in there. I'm going to be pretty disappointed as a consumer. But that's why it's subject to the artistic judgment isn't it? And that does qualify the substantial compliance. It cannot eviscerate the substantial compliance requirement and that's the problem here. We're well into your rebuttal time and plus some, plus some, plus some. Thank you very much.  Your Honor. Thank you. Case is submitted.